Case number 10-3350, People v. Bernard Williams. Please introduce yourself to the court. Good morning, Your Honors. I'm Arianne Stein on behalf of Bernard Williams. In his post-conviction petition, Williams made a substantial showing of actual innocence through newly discovered evidence that would have undermined the state's entire case against him. Now, to obtain relief on a claim of actual innocence, a petitioner must include supporting evidence that is material, non-cumulative, and of such conclusive character that it probably would have changed the result on trial. And the evidence has to be unavailable at trial, and also it could not have been discovered sooner through due diligence. Well, there's the rub. What does Mr. Smith, who's the missing witness? There are two witnesses. The missing witness was, yes, Eric Smith. Not Mr. Nash, the other one. Smith, correct. Mr. Smith says nobody ever came to get him. He doesn't say that he was unavailable. He doesn't say that he moved and, therefore, nobody could find him. He says nobody ever came to get him, to go to trial, and he would have testified had he gone to trial. So why is that newly discovered evidence? And why doesn't the due diligence rule apply? It's true, Your Honor, that Smith's affidavit does say that no one came to got him, but that doesn't mean that efforts weren't made by both sides to try and find him. Well, what do we have before us that says due diligence was exercised? Well, we have the prosecutor at the original hearing on the motion to dismiss told the court that neither the prosecution nor the state were able to find Mr. Smith. Prosecution didn't need him. Well, he was listed as a witness. But they didn't need him. That's true, but even the circuit court judge here noted that there wouldn't have been a reason for Williams to go out and look for Smith if he's listed as a witness on the state's discovery. We've seen that argument many, many times before, and that doesn't happen. Just because an individual is listed on the state's discovery doesn't obligate the state to actually call the individual. And the defendant is never, never, should never rely on the mere presence of the name of the individual. The defendant has an obligation to track down witnesses of his own, and if he doesn't exercise it, then the question is, did he really act with due diligence? Well, I think that we also have to look at Detective Cato's testimony at trial, where Detective Cato says that the police made attempts to look for Smith, and they were unsuccessful. Where the police is unable to find him, I think it's unfair to put a more onerous burden on the defendant to go out and find him. All I'm saying is that if he was really unavailable, then we should have something before us that says, you know, all these efforts were made from the defendant's side, not from the state's side. I think based on the evidence that we do have in the record, it does suggest that he wasn't able to be found by either side. Even the state, at the original motion, the original hearing, says that nobody was able to find him. Let's say that the state didn't make much of an effort at all, because they really didn't need him. You know, let's say they knocked on the door once, and that was it. Nobody answered, they go away. But the defendant, to the extent that he has a claim of actual innocence, that this individual will testify, contrary to Nash, that he wasn't the shooter, or he wasn't even present. It seems to me that the burden is on the defendant to exercise due diligence and make sure he brings him to trial, brings him to court. Well, I think you're right, Your Honor, there aren't specifics in the record as to what efforts the defense did make. We also have to point out that after trial, the defendant is incarcerated. He doesn't have resources available to him until he's appointed counsel. But also, it's not that the prosecution didn't only say that the state couldn't find him. At the hearing, the prosecutor said neither the state nor the defense were able to find him. And really, the question before us is, is the showing that's been made on the record before us a substantial showing that would entitle the defendant to go forward to the third stage of a post-conviction petition?  I believe it is, Your Honor. And even if we say that he didn't make the due diligence standard with respect to the affidavit from Smith, the recantation affidavit from Nash is sufficient to meet that standard. There have been other cases, such as People v. Hernandez, where there's only one witness, and that witness recants up to eight years later. And nevertheless, the court says, yes, let's go ahead and move this to a third stage hearing. Isn't the whole object of this thing on a post-conviction petition is when somebody claims actual innocence, like in Ortez. And we have evidence here in an affidavit that somebody else was the shooter. Certainly, they should get a hearing to prove that they're actually innocent. Should we put a roadblock in front of them and say, well, you know, there wasn't enough here to show, so maybe he was a little negligent? Or should we really give a hearing to determine when people are actually innocent, that they should be released from prison? I mean, this state is a laughingstock for having innocent people in prison and sending them to the gallows. You're absolutely correct, Your Honor. We should move this forward to a third stage hearing. Again, I would point out People v. Hernandez, another second stage case where a witness recanted eight years after the fact. What about Ortiz? I'm sorry, Your Honor, I'm not as familiar with the Ortiz case, but I think Hernandez applies extremely well to this case, where the court there held that the post-conviction judge was not the same judge as the trial judge and wasn't able to make credibility findings because it didn't hear the witnesses testify originally. And that's exactly what we have here. The post-conviction judge was not the same as the trial judge, and so it should move forward to a third stage hearing. And I'd also like to point out that with respect to Nash, Williams did meet the due diligence standard with the investigators at the time as well. Can I ask a question? Because you all keep talking about due diligence. Isn't that a third stage determination anyway? That is true as well, Your Honor. It's whether it's newly discovered. At the second stage, whether it's newly discovered. But isn't it a third stage determination whether or not he used due diligence in discovering it? If it is evidence of actual innocence or could be evidence of actual innocence. Right, that's correct as well. And I think for what he needs to show at the second stage... I don't understand that. Are you saying that he's entitled to a third stage evidentiary hearing and at the evidentiary hearing the state can challenge his due diligence and if they show he had a lack of due diligence, then the evidentiary hearing is aborted? And so you can't go forward with it? I thought due diligence is a burden to be met to entitle you to an evidentiary hearing. Well, he does have to make a substantial showing of due diligence. I think there could be further evidence at the hearing of that as well. They could also put on witnesses for the substantive matter as well. And concerning the investigator's affidavit with Nash's recantation, he did have due diligence with that as well. The state's saying, well, he waited seven years to get that recantation, but again, he's got no control over when a witness would recant. Unless we're going to enforce a policy of asking defendants to harass witnesses and continually ask them to recant, there was no way he would be able to contact Nash while he's incarcerated. It wasn't until post-conviction counsel was appointed that he was able to go out and get that affidavit. Also, besides the due diligence, Williams has shown that the outcome of the trial would have changed with these two new affidavits. There was no other physical evidence that linked him to the scene. He wasn't arrested near the scene. There was no gun recovered. And again, Nash was the only witness at trial to identify him as a shooter. And I think it's important to note that Smith was the intended target here. And if Smith is now saying that, no, he's not the shooter, that throws the state's whole theory and motive out of the water. You know, it would help, though, if Smith came forward and said, not only is it not the defendant, but it's this other individual that I know from the streets that had a grudge against me, and we don't have something like that, do we? That's true, we don't have that, Your Honor, but he did say that he had seen Bernard. All we have is his statement that it wasn't the defendant. Right, but however, Smith's affidavit does say that he would be willing to look at Bernard. So how do we know that it wasn't the defendant if he can't really say who it was? Because he says he was familiar with the defendant before this time. He said he knew the defendant from the neighborhood, and when he saw the two shooters, he was able to recognize that that wasn't the defendant, and even though he doesn't know the shooters, he is willing to identify people. But you accept that he did give contrary statements? Well, it's unclear. Detective Cato testified that after speaking to Smith, he was then looking for Williams, but we don't know. First of all, that's only admitted for police course of investigation. It can't be admitted for the substantive truth, and we also don't know what it is that Smith said. Smith could have said, oh, I heard that my friend said that Williams was involved, unless the police were just looking for Williams. He could have said that Williams maybe knows who the shooter is. It's unclear as to what that was admitted for. So based on these affidavits, the case should be remanded for a third stage hearing. Thank you. Good morning, Your Honors. My name is Michelle Grimaldi-Stein. I am an assistant state's attorney, and I represent the people of the state of Illinois. Are you familiar with the Ortiz case? I'm very familiar with the Ortiz case. Due diligence is a second stage inquiry that is demonstrated unequivocally by the Illinois Supreme Court case of People v. David Harris. That citation is 206-293. It is a case where the Supreme Court found that because the defendant wasn't diligent in obtaining this information, that the trial court's dismissal or circuit court's dismissal of his petition at second stage was not improper. Now, that being said, the information in Ortiz was significantly different, and the demonstration of the defendant's diligence in Ortiz was significantly different. Wasn't the big thing in Ortiz that they told us who the shooter was? I think that there was significantly more than that. There was evidence that he was there, what he saw. There was evidence that the defendant in Ortiz had presented that claim of innocence several times, that he was diligent in trying to obtain that information. But in this case, the defendant has, even though it's his burden to show diligence, he has failed to show any diligence at all. Because while my opposing counsel says that both sides were looking for Mr. Smith, that statement was made by the public defender at the hearing below, and it was not supported with any evidence. He is not named on their list of witnesses. The attorney did not say what the defendant did. And there is a reason why, and there's also evidence of record other than Detective Cato's testimony, that Smith named the defendant. And one of the best evidence of records is the fact, if you look at the PSI, out of the defendant's own statement about this crime that's listed in the PSI, is that Smith named him as somebody being involved in the shooting. And I can tell you where in the record that is so that you can look. I will find that in a minute and then I will tell you. But it was out of the defendant's own mouth. Now, more importantly, the documents which the trial court here relied on in finding that Smith named the defendant, those were police reports which the defendant had appended to his pro se petition, which miraculously didn't find their way into the record in this appeal. But those documents, and it's clear based on the court's order, in detail discuss exactly what Eric Smith told the police, why he was in custody, what he said, and it was very clear that he identified the defendant, Bernard Williams, as being one of the perpetrators. Now, what we have is we have evidence that the defendant didn't look for Smith at the time of trial, didn't want him there. In fact, he said in the PSI, he hasn't come to court one time. So he didn't want him there. He didn't look for him. And he's seeking to rely on the state's efforts to give him due diligence. He's provided no authority that he's entitled to rely on anything that the state did to show his due diligence in bringing forth evidence. The point of the matter is, Judge, is that the trial has to remain under our system of jurisprudence the primary venue in which you prove the guilt of the defendant. And as the circuit court here correctly recognized, in every case there is a witness that maybe somebody can't find. So what does the defense do? Do they sit on that, try their case without that witness, and then come back sometime later and say, oh, by the way, I found this guy now? But given the acknowledged history in our criminal justice system of individuals being convicted wrongly, why shouldn't we give everyone a new trial or an evidentiary hearing when he is able to bring a witness that recants or identifies a witness that could have exonerated? Why shouldn't we? I believe the law requires that we do that when the defendant has made a compelling showing, a substantial showing of a compelling case. And I do believe that it would, A, fundamentally change our entire system of jurisprudence if we did that, and it certainly would bankrupt the state if we did that. But be that as it may, we've got no diligence from the defendant any time after the conviction. For seven years he did nothing. And you know how we know he did nothing, Judge? Because he didn't raise this actual innocence claim in his own pro se petition. He didn't even say, I want to raise this claim, but I can't find the witnesses to support it. This claim wasn't even raised until 2005 when his attorney filed a supplemental petition. That's not due diligence. So as regards that, and as for Martin Nash, they didn't introduce any evidence. They didn't even try to rely on what we did. They didn't introduce any evidence as to why, what they've been doing to try and find him, what they came across that made them think that maybe Nash... Let me ask you this question. What if this is an innocent man? So on the technicality, we should keep him in jail his whole life? Is that what we should do? Your Honor, there's more than the due diligence requirement. And I would say, submit... We could put roadblocks in front of anyone. But if this is an actually innocent person, shouldn't they have a hearing to be able to show that? He has not established even a substantial showing that he's an actually innocent man. And let me discuss the other suggestions. So you're ready to determine he's not an actually innocent person? Yes. He is legally not an actually innocent person. He is a legally validly convicted person. I thought your position was that he himself, in his pro se post conviction petition, never made that claim. He never questioned. He never ever has said, I'm an actually innocent, until somebody else raised that claim for him. Even if this court were to consider the affidavits, the hearsay affidavit of Nash, which in itself should not be considered substantial enough to make any showing whatsoever. And this case is not like the capital case of Sanchez on which the defendant relies. There are just absolutely no facts that render them in any way analogous. But even if this court were to consider it, Nash's affidavit is not exonerating. Nash's affidavit says, I was high, the cops suggested who I should identify, I made a deal with the state in return for money and a good sentence, and I lied on Bernard Williams at trial. He never said, I wasn't present at the shooting, I didn't see the shooters, or if I did see the shooters, he wasn't one of them. That I lied when I identified the defendant in a lineup, or that my identification was not based on what I saw. What the defendant's trying to do with this total hearsay, unreliable affidavit is at best impeach Nash's trial testimony. And that is not evidence of actual innocence. And that's made clear by Justice McMorrow's concurring opinion in Washington. That's perjured testimony. That goes to attacking the sufficiency of the evidence at trial. It is not what the very limited, narrow exception for actual innocence that was created in Washington, it wasn't intended to apply. Can I interrupt you for just a second? If we throw out Nash's recanted testimony, and we just look at Smith. Let me just ask this. If we look at Smith, who says he was there, he did see the shooting, he isn't saying he knows who the shooters are, but he is saying that this defendant is not one of the shooters. And if at the second stage the court has determined that he used due diligence in obtaining this affidavit, given the facts of the case, the fact that you only have the one eyewitness, Nash, and no physical evidence, nothing to corroborate that one person's identification, do you think that's enough to get the case to a third stage hearing because you have one witness saying he is the shooter? Because I'm believing Nash is a good I.D., Smith another person says he's not the shooter, and there's nothing else. Let me interrupt you. Can I get my question answered first before you interrupt? I want to throw out this, doesn't it require that Smith be newly discovered evidence? Your Honor, it does require that. Okay. First of all, the due diligence finding that the circuit court made below, this court isn't bound by that. This court has de novo review, and I would agree with you, Justice Garcia, I think the due diligence inquiry can cut off the defendant's right, but I don't think that that's actually the State's strongest argument. It's not the State's strongest argument. And I'll tell you what the State's strongest argument is, and that's the evidence introduced at this trial. Because the test for newly discovered evidence of actual innocence is not, as the public defender discussed below, whether if Judge Surya knew what he had now, these two affidavits, if that would have changed Judge Surya's decision in the bench trial. The issue, the standard is, would he change the result on retrial. Now what does that mean? That means that we get to introduce all the evidence that was introduced at trial, we get to consider that, against this new evidence. You have one affidavit, you have Smith's affidavit. Now Smith would be impeached, even if he testified in accordance with his affidavit, he would be impeached by what he told the detectives immediately after the shooting, that he named Bernard Williams. So he would be impeached with that. He would also be impeached with his claim in his affidavit that nobody was looking for him, nobody ever asked him, because that's simply not true, and it's clear from the evidence of record that it isn't true. It's clear that he evaded police to avoid testifying. Now Smith's testimony a la this affidavit would not completely rebut Nash's trial testimony, as opposing counsel has said, because opposing counsel says that they had a similar vantage point so Nash couldn't have seen what he's seen. Now the testimony at trial from Nash was that Smith turned and ran as soon as the defendants upped their guns from their waistbands, and that Nash initially ran, but when he realized his 10-year-old was the deer in the headlights looking at these shooters coming, he turned around, he ran back, and it's when he grabbed that 10-year-old and went to pull him out, he was only 15 to 20 feet from the shooters, he had a clear look at their faces, so what he saw was significantly different than anything that Eric Smith did or did not see. That's number one. Number two, Nash's trial testimony was corroborated by a lot of other evidence. It was corroborated by the ballistics evidence, where the 9mm casings were found, two separate areas, two shooters. It was corroborated by the testimony of Lucinda Birmingham. If you look at Mr. Nash's testimony, and this was not even brought out on direct, this was brought out on cross, he tells that it was that lady, and she was walking down and she wasn't paying any attention because she was scratching off lottery tickets, and all of a sudden she popped right into the shooting and she got hit. And what does Lucinda Birmingham testify? I was walking down the street, I wasn't paying any attention because I was scratching off lottery tickets, and I realized I'd been shot. Now Nash testified that he saw two shooters between the ages of 19 and 21 years old, that they were dressed in black, and one had braids in his hair. What did Lucinda Birmingham testify? That there were two young men that ran over her after she was shot. They were dressed in black. They were 18 to 19 years old, and one had braids in his hair. That's corroboration of Nash's testimony. Now, the most damning piece of evidence that we have. Are we going to go over all the evidence? I thought this was a legal question. Defendant's confession. Defendant did confess. He made an oral confession. He's now trying to distance himself from that as he did at trial, but we had two different witnesses other than the original detective who took that confession that corroborated that. One, another detective who was in the room when the defendant made those confessions, and the assistant state's attorney on felony review who said, the defendant said to me, I've already told the detective what my involvement in this All of that evidence, and in point of fact, Judge Lampkin, that Harris case that I cited for you before also supports the argument that the court could properly consider D'Angelo Johnson's confession, which specifically named Bernard Williams as his partner in determining whether the defendant had made a substantial showing of innocence. So the court is armed with a plethora of evidence demonstrating this defendant's guilt and looking at that paltry affidavit that he did nothing to obtain, that comes in seven years later to try and impeach a conviction that was obtained during a fair trial with what the Supreme Court in D'Angelo Johnson's case called not closely balanced evidence. The defendant has failed to make the required showing of a substantial showing of a constitutional violation to warrant a third state hearing in this case. The circuit court properly dismissed this petition, and the people of the state of Illinois respectfully request that you affirm that decision. Thank you. Just a few brief points, Your Honors. I'd first like to correct a misstatement of fact made by a proposing counsel. The statement that was made at the hearing below that both sides were unable to find Smith was not made by the public defender. It was made by the state's attorney, and you can find that on the record on Q11 through Q12, which I think is definitely an important distinction. Well, the public defender didn't say that that was an untrue statement, right? Right, that's correct. The state's attorney says neither side were able to find this witness before trial. And there was nothing, and the public defender didn't say, oh no, the state's attorney's lying? Right, correct. That's correct, Your Honor. And even if we only had Smith's affidavit... How would the state's attorney who made that statement know what the efforts were by the defense to locate a witness? It's not clear whether there was perhaps some conversation between the counsels. And why should that make any difference? Well, I think that because at that point you're having the state basically concede that an effort was made by both parties. It's not just the defense saying... Then we go back to the original question. What effort did the defense make, and that is spread of record, that we can point to and say, this is the diligence the defense made to locate this witness? You're right, Your Honors. Other than what was made before the court during that hearing that they did not have, that no side was able to find him, and Detective Cato's testimony that the police were unable to find him, there isn't any further evidence. But again, after trial, he's incarcerated and doesn't really have the resources to go out and look for that witness. Another question was asked that even if we only had Smith's affidavit, would that be enough for a third-stage hearing? And yes, it would. If we look at People v. Morgan, there was a lot more evidence in that case. There were several witnesses, and only one witness recanted. The court went ahead and moved that ahead to a third-stage hearing. And even if we get rid of Smith's affidavit and we only have Nash's recantation, that's also enough to move it forward. The state says that we don't know what Williams did to contact Nash, but again, we don't want a defendant after trial to continually harass witnesses asking, when are you going to recant? When are you going to recant? There's no way that a defendant has control over when a witness is going to recant. And again, it wasn't until he had a post-conviction counsel appointed that he was able to have resources to go out and find him. What about the observation made by counsel that Mr. Williams, in his pro se post-conviction petition, never made a claim of actual innocence? That's true, Your Honor, but that could be because he didn't have any of the evidence available to him. He didn't know what happened? He makes the claim that he wasn't proved guilty beyond a reasonable doubt, but he can certainly make a claim that I was never there. Without any evidence to support that, it would be extremely difficult to make that claim. In People v. Barnes later, the court held that recantations can be considered newly discovered evidence. And the state here is also trying to say that People v. Sanchez does not apply. Sanchez was a capital case in a 214-01 case as well, so it is a little bit different. But Sanchez does say that affidavits from investigators are sufficient when one can't be obtained from the witness because the subpoena power of the court can make that witness appear at the hearing. Sanchez doesn't only limit his opinion to 214-01 opinions, but also said that there are other circumstances, such as motions to dismiss, where that kind of evidence can come in. And I'd also like to point out concerning the defendant's statement, Cato testified that he did give an oral statement, but there was a lot of suspicion concerning that statement. Right after he supposedly confessed or said that he was involved, the state's attorney was called in and he tells the state's attorney, no, I'm not talking, I want a lawyer. And that's exactly what Williams continued to maintain at trial, that he continually asked for a lawyer and did not give a statement. The state also points out Co-defendant Johnson's statement, but I'd like the court to note that Co-defendant Johnson did allege in a post-conviction petition that Cato coerced him into his confession, and so that's not reliable as well. Therefore, we would ask that this be remanded for a third state hearing.